IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.:_____

FISH SHACK, LLC,

                Plaintiff,

v.

PHIL MCMULLEN, Individually
and 1831 COMPANY, LLC,

                Defendants.
_____/

_____

**PLAINTIFF'S COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FEDERAL UNFAIR ADVERTISING; FEDERAL CONTRIBUTORY TRADEMARK INFRINGEMENT; COMMON LAW UNFAIR COMPETITION; VIOLATION OF FLORIDA DECEPTIVE TRADE PRACTICES ACT; COMMON LAW CIVIL CONSPIRACY; COMMON LAW TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS; COMMON LAW TRADEMARK INFRINGEMENT**

_____

Plaintiff, FISH SHACK, LLC ("FISH SHACK"), by and through its undersigned Attorney, files the instant Complaint and alleges as follows:

### I. NATURE OF THE CASE

1.      Plaintiff is the owner and operator of the *Fish Shack* restaurant located in Pompano Beach, Florida which has been prominently featured on national television programs highlighting its unique format and top-quality seafood specialties. Plaintiff owns the first use and trademark rights to the *Fish Shack* name, logo and the slogan "Kick Back at the Fish Shack" (collectively "Plaintiff's Marks") that have been in exclusive and continuous use since 2011.

1

2.      Despite the foregoing, this lawsuit arises from the willful and deliberate actions of the defendants in first conspiring to purloin plaintiff's proprietary information and then opening a seafood restaurant with the identical name, logo, slogan and menu design in a blatant attempt to profit from plaintiff's long-established goodwill and reputation, and intentionally deceive consumers into believing that the two operations were affiliated.

3.      In addition to using a virtually identical menu to the one used by plaintiff, defendants went much further in their attempt to deceive and confuse the consuming public. Remarkably, defendants actually misappropriated plaintiff's personal family history displayed on its *Fish Shack* menu and copied the plaintiff's background for use on its own menu. Copies of the two menus are attached to the Complaint and identified as *Exhibits "A" and "B"*.

4.      All of defendants' actions were calculated to cause consumer confusion and falsely imply that the two operations were related. These actions constitute repeated and continuous infringement and dilution of plaintiff's first use and trademark rights and false and deceptive advertising under *15 U.S.C. §1125 (a)* as well as violations of the statutory and common law protections outlined below. Accordingly, plaintiff has filed this lawsuit seeking a preliminary and permanent injunction to prevent any further injuries as well as the entry of an award of damages and attorney's fees and costs against defendants for its actions to date and to prevent further injury to the plaintiff.

## II. JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over plaintiff's Lanham Act claims pursuant to *28 U.S.C. §1331* and *15 U.S.C. §1121* et seq.

6.      This Court has supplemental jurisdiction over plaintiff's pendent state law claims pursuant to *28 U.S.C. §1367* in that the state law claims are integrally interrelated with plaintiff's

federal claims and arose from a common nucleus of operative facts such that the administration of the state law claims with the federal claims furthers the interest of judicial economy.

7. This Court has personal jurisdiction over all the defendants in this matter. Defendant McMullen is upon information and belief a resident of Broward County, Florida located in the Southern District of Florida. Defendant 1831 Company, LLC's registered office and registered agent are located in Broward County, Florida and both defendants were engaged in and committed tortious and statutory violations in the Southern District of Florida against plaintiff whose principal place of business in also located in this District.

### III. PARTIES

8. Plaintiff FISH SHACK, LLC is a Florida Limited Liability Company with its principal place of business located in Broward County, Southern District of Florida.

9. Defendant Phil McMullen is, upon information and belief, a resident of Broward County, Southern District of Florida.

10. Defendant 1831 Company, LLC is a Florida Limited Liability Company whose registered agent and registered office are located in Broward County, Southern District of Florida and its principal place of business is, upon information and belief, located in Port Orange, Florida.

### IV. FACTS

11. In 2011, plaintiff opened its current *Fish Shack* restaurant in Pompano Beach, Florida and first started using the trademark name *Fish Shack* together with the slogan "Kick Back at the Fish Shack" in close proximity to a fisherman in front of a fishing shack.

12. At all times since its inception in 2011, Plaintiff's Marks have been in exclusive and continuous use by plaintiff including menus, business cards, t-shirts, and in all forms of

advertising and social media. As a result, Plaintiff's Marks have become intimately associated with the *Fish Shack* restaurant itself.

13.     In addition to garnering a strong cult-like local following, the *Fish Shack* has been prominently featured on the Food Network program *Road Trips* hosted by Alton Brown. This national exposure has been particularly helpful in establishing the pervasiveness of Plaintiff's Marks given Florida's status as a tourist destination for many out of state residents who watch the Food Network and travel to Florida on vacation.

14.     The *Fish Shack* is also consistently rated the highest or near the top with customer reviews for seafood restaurants on *Trip Advisor* and *Yelp* which have become the lifeblood of the restaurant industry and a huge determinant in both the revenue and success or failure of individual restaurants.

15.     As a result of the local and national exposure as well as its success on the customer review websites, plaintiff has been approached on numerous occasions by experienced restauranteurs interested in franchising the entire *Fish Shack* concept and design throughout Florida. Although final plans have not been developed, plaintiff expects to pursue its growth options throughout the geographic zone of expansion which includes the entire State of Florida.

16.     Upon information and belief, Defendant McMullen had express knowledge of the history and current success of the *Fish Shack* and first approached the plaintiff's owner in March 2016 with vague proposals to open a second unrelated restaurant in partnership with the plaintiff.

17.     Plaintiff was not interested and did not pursue McMullen's proposal and did not at any time encourage, endorse or pursue a business relationship with Defendant McMullen or allow him to utilize Plaintiff's Marks or materials in any manner.

18.     Despite plaintiff's refusal to engage in business discussions with him, Defendant McMullen repeatedly visited the *Fish Shack* from March – December 2016 as part of his planned conspiracy to duplicate the restaurant design and concept. At all relevant times during 2016, Defendant McMullen acted personally and individually and did not represent himself as being affiliated with any corporate entity.

19.     Similarly, Defendant McMullen sent approximately 20 text messages and multiple photos to plaintiff's owner between March and December 2016 which included comments like "need some of your knowledge" to requesting input on the pictures of potential restaurant locations he was considering. At no time during these communications did McMullen state or remotely indicate that he was planning to open a restaurant identical to the *Fish Shack* and did not ask for or receive permission to use Plaintiff's Marks at any time.

20.     Shortly after his last contact with plaintiff in December 2016, McMullen formed 1831 Company, LLC in January 2017 as its sole member and registered agent while apparently using his home address for the registered office. Upon information and belief, the LLC is merely the alter ego of defendant McMullen and does not have a legitimate independent existence. Subsequently, on or about March 2017 McMullen conspired with his single member LLC to fraudulently open a duplicate "Fish Shack" restaurant in Port Orange, Florida which not only misappropriated the name of plaintiff's restaurant, but deliberately copied the "Kick Back at the Fish Shack" slogan surrounded by the identical fisherman in front of a fishing shack with the sole purpose of creating confusion in the marketplace as to its affiliation with plaintiff's *Fish Shack* restaurant. The unauthorized use of Plaintiff's Marks extended to all aspects of defendants' business operations including outdoor signage, prominently displayed inside the

5

restaurant and featured on Facebook and other social media sites. Examples are attached to the Complaint and identified as *Exhibit "C"*

21. Defendants also created a virtually indistinguishable menu from the one created and utilized by plaintiff in a further effort to foster likely confusion in the marketplace. The menu is the same size and fold-out design with a map on the back, the identical hours and days of operation and prominently displays Plaintiff's Marks on the front of its menu in the exact same fashion as plaintiff's menu does.

22. However, the strongest evidence that defendants deliberately intended to benefit from Plaintiff's Marks and associated goodwill is blatantly portrayed in the alleged "family seafood history" spelled out on its menu which is attached hereto as Exhibit "B". The defendants not only plagiarized the plaintiff's family history word for word, but further added the words "so we decided **to expand our concept** of a small affordable seafood restaurant **further north** to Port Orange!" Given that neither defendant was actually involved in a "small affordable seafood restaurant" south of Port Orange or in fact anywhere in the State of Florida or in the entire country, it's clear that this fabrication was intended for the express purpose of deceiving customers into believing that the two establishments were related.

23. There can be no doubt that defendants' actions were intentional, deliberate and blatant efforts to create not only confusion in the marketplace, but to actively affirm and represent that a clear link and affiliation existed between the two restaurants. While obviously the use of Plaintiff's Marks created a likelihood of confusion for restaurant consumers, inclusion of the language "expand…further…north" removes any doubt from a potential customer as to the clear alleged link between the two operations.

24. As a result of defendants' actions, plaintiff has sustained and continues to suffer numerous injuries including trademark dilution, reduction in sales, diminished investor interest in franchising and customer confusion in the marketplace. In addition, since opening defendants' restaurant has received multiple inspection violations and has otherwise conducted itself in a manner which continues to cause injury and damages to plaintiff's long-standing reputation and stellar online ratings.

**FIRST CLAIM FOR RELIEF**
**LANHAM ACT TRADEMARK INFRINGEMENT 15 U.S.C. §1125 (a)**

25. The allegations in paragraphs 1-24 are realleged as if set forth in full herein.

26. Plaintiff was the first to use Plaintiff's Marks and began using the marks when the *Fish Shack* initially opened for business in 2011. Since that time, Plaintiff's Marks – which include the *Fish Shack* name, slogan and logo – have been in exclusive and continuous use and plaintiff has expended a significant amount of time, money and effort in creating and strengthening the *Fish Shack* brand name.

27. Because of the first use of Plaintiff's Marks in the applicable marketplace and subsequent exclusive and continuous use of the marks since first use, plaintiff has a legally protectable interest in the marks and is the sole owner of the rights associated with Plaintiff's Marks thereto.

28. The defendants' unauthorized conduct in using Plaintiff's Marks in commerce and misappropriating the marks for use in its restaurant operations were intentionally and expressly intended to cause a likelihood of consumer confusion.

29. Plaintiff and defendants are in the same seafood restaurant subset and the defendants' operations are well within plaintiff's zone of geographic expansion. As a result, defendants unauthorized actions and ongoing operations have directly caused significant consumer confusion in the marketplace and economic injury to the plaintiff.

30. Accordingly, plaintiff is seeking a preliminary and permanent injunction barring defendant from any further use or reference to Plaintiff's Marks as well as disgorgement of all profits attributable to the wrongful use of the marks, reimbursement of plaintiff's lost profits, the costs of filing the instant action and additional damages up to three times the total damage amount and prevailing party attorney's fees due to the intentional and deliberate nature of the defendants' conduct.

**SECOND CLAIM FOR RELIEF**
**LANHAM ACT FALSE ADVERTISING 15 U.S.C. §1125 (a)**

31. The allegations in paragraphs 1-24 above are realleged as if set forth in full herein.

32. The defendants' actions in utilizing false and deceptive advertising has resulted in significant injury to plaintiff's commercial interest in both reputation and sales.

33. Defendants have made numerous misrepresentations of material facts including without limitation verbal and written representations that its operations were directly affiliated with plaintiff's *Fish Shack* restaurant, stealing plaintiff's owners personal history and experience by representing it as its own and alleging in its advertising that the restaurant "decided to expand…further north to Port Orange" and was literally a northern expansion of the existing *Fish Shack* restaurant in a blatant attempt to deceive consumers.

34. All of the defendants' false and deceptive advertising was intended to create the likelihood of consumer confusion in the marketplace and to profit from the long-standing goodwill and stellar reputation developed by the plaintiff. As a proximate result of the defendants conduct alleged herein, plaintiff has sustained and continues to suffer significant injuries for which compensatory remuneration will only partially repair the damage. Accordingly, plaintiff is seeking a preliminary and permanent injunction barring defendants from any further use or reference to Plaintiff's Marks, the retraction of all false and misleading

advertising and publication of a disclaimer of affiliation with the *Fish Shack*. Plaintiff is also seeking a disgorgement of all profits attributable to the wrongful use of the marks, reimbursement of plaintiff's lost profits, the costs of filing the instant action and additional damages up to three times the total damage amount and prevailing party attorney's fees due to the intentional and deliberate nature of the defendants' conduct.

## THIRD CLAIM FOR RELIEF
## CONTRIBUTORY TRADEMARK INFRINGEMENT 15 U.S.C. §1114 ET SEQ.

35. The allegations in paragraphs 1-24 above are realleged as if set forth in full herein.

36. Plaintiff has alleged and shown herein direct trademark infringement by defendants. In addition to such direct infringement by individual defendants, every other defendant is likewise culpable and liable to plaintiff for contributory trademark infringement. In relation to the direct infringement and other related violations by each defendant, every other defendant has willfully, knowingly, intentionally and in bad faith participated in, aided, abetted, enabled, encouraged, ratified, profited from, induced, known of, conspired to carry out and otherwise contributed to said direct infringement.

37. Defendants activities complained of herein constitute contributory infringement pursuant to 15 U.S.C. §1114 et seq. As a result of defendants' contributory infringement, plaintiff has suffered and continues to suffer and incur irreparable injury, loss of reputation and pecuniary damages in excess of $50,000.00 to be proved at trial. Unless enjoined by this Court, defendants will continue these acts causing further and immediate irreparable damage to plaintiff.

## FOURTH CLAIM FOR RELIEF
## FLORIDA COMMON LAW TRADEMARK DILUTION

38. The allegations in paragraphs 1-24 above are realleged as if set forth in full herein.

39. The defendants use of Plaintiff's Marks in connection with the marketing and provision of services related to its restaurant operations – which plaintiff has no ability to exercise any control – creates a likelihood of injury to plaintiff's business reputation and of dilution of the distinctive quality of Plaintiff's Marks in violation of Florida state common law.

40. Defendants acts alleged herein have caused and unless restrained and enjoined by this Court, will continue to cause irreparable injury to plaintiff for which the remedy at law is only partially adequate. Accordingly, plaintiff is seeking a preliminary and permanent injunction barring defendant from any further use or reference to Plaintiff's Marks as well as disgorgement of all profits attributable to the wrongful use of the marks, reimbursement of plaintiff's lost profits and the costs of filing the instant action.

## FIFTH CLAIM FOR RELIEF
## FLORIDA COMMON LAW UNFAIR COMPETITION

41. The allegations in paragraphs 1-24 above are realleged as if set forth in full herein.

42. As a result of the conduct described above, the defendants have misappropriated valuable property rights belonging to plaintiff and are seeking to trade on the goodwill symbolized by Plaintiff's Marks. As such, these actions are likely to confuse and deceive members of the consuming public regarding the origin, sponsorship or approval of the defendants' goods and services in violation of Florida state law regarding unfair competition.

43. The defendants' acts alleged herein have caused, and unless restrained and enjoined by this Court will continue to cause irreparable harm including usurpation of goodwill, confusion to potential customers and injury to plaintiff's reputation for which there is no adequate remedy at law. Accordingly, plaintiff is seeking a preliminary and permanent injunction barring defendant from any further use or reference to Plaintiff's Marks as well as

disgorgement of all profits attributable to the wrongful use of the marks, reimbursement of plaintiff's lost profits and the costs of filing the instant action.

### SIXTH CLAIM FOR RELIEF
### FLORIDA DECEPTIVE TRADE PRACTICES ACT

44. The allegations in paragraphs 1-24 above are realleged as if set forth in full herein.

45. Defendants' have engaged in fraudulent acts and practices in violation of the prohibition against unfair competition and deceptive trade practices pursuant to FL Stat. §501.204 et seq.

46. Defendants' have used and are using Plaintiff's Marks in such a manner as to intentionally misrepresent their source, sponsorship and approval of defendants' fraudulent services and marketing by plaintiff.

47. Defendants' wrongful use of Plaintiff's Marks creates the unreasonable risk that current and prospective customers and other members of the general public may conclude that there exists some affiliation, connection or association between plaintiff and the defendants.

48. Defendants' acts have damaged, impaired and diluted that part of plaintiff's goodwill and good name symbolized by its marks. The nature, probable tendency, intent and effect of defendants' use of Plaintiff's Marks is to enable them to deceive the public.

49. Defendants' had actual knowledge of plaintiff's rights before and during its wrongful use of Plaintiff's marks and willfully and deliberately infringed upon plaintiff's rights.

50. Defendants' unfair business practices are of a recurring nature and are harmful to consumers and the public at large, as well as to plaintiff. These practices constitute unlawful, unfair and fraudulent business practices and unfair, deceptive, untrue and misleading advertising and constitute unfair competition as prohibited by *Fla. Stat. §501.204 et seq*.

51. As a result of defendants' acts, plaintiff has suffered and continues to suffer actual damages and incur irreparable injury, loss of reputation and pecuniary damages in excess of $50,000.00 to be proved at trial. Unless enjoined by this Court, defendants' will continue these acts thereby causing further immediate and irreparable harm. Accordingly, plaintiff is seeking a preliminary and permanent injunction barring defendant from any further use or reference to Plaintiff's Marks as well as disgorgement of all profits attributable to the wrongful use of the marks, reimbursement of plaintiff's lost profits, the costs of filing the instant action and attorney's fees pursuant to *FL Stat. §501.2105 et seq.*

## SEVENTH CLAIM FOR RELIEF
## FLORIDA COMMON LAW CIVIL CONSPIRACY

52. The allegations in paragraphs 1-24 above are realleged as if set forth in full herein.

53. Defendants' entered into a civil conspiracy to unlawfully and unfairly compete with plaintiff and deprive plaintiff of the benefit of its goodwill and reputation and the benefit it derives from Plaintiff's Marks.

54. Defendants' have by their conduct unlawfully traded on the goodwill and reputation of plaintiff and Plaintiff's Marks, proximately damaging plaintiff by way of lost profits and damages to the goodwill and reputation of plaintiff as well as infringement and dilution of Plaintiff's Marks.

55. Defendants are jointly and severally liable for damages incurred by plaintiff in an amount which will be proven in trial. Accordingly, plaintiff is seeking a preliminary and permanent injunction barring defendant from any further use or reference to Plaintiff's Marks as well as disgorgement of all profits attributable to the wrongful use of the marks, reimbursement of plaintiff's lost profits and the costs of filing the instant action.

## EIGHTH CLAIM FOR RELIEF
### FLORIDA COMMON LAW TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

56. The allegations in paragraphs 1-24 above are realleged as if set forth in full herein.

57. By falsely creating the perception that defendants' unlawful use of Plaintiff's Marks implied an affiliation, sponsorship or approval of its actions by plaintiff, defendants' knowingly and tortiously interfered with plaintiff's valid business expectancy and future potential business relations and probable future economic benefit between plaintiff and its customers.

58. In doing so, defendants acted with the specific purpose and/or intent to harm plaintiff and did so without proper justification, privilege or consent using materials and information that was intentionally false and misleading. Defendants' actions constitute tortious interference with prospective business relations under Florida State law.

59. As a direct result of defendants' actions, plaintiff has suffered actual damages including but not limited to damage to plaintiff's business relationship and trust with its current and prospective customers. Accordingly, plaintiff is seeking a preliminary and permanent injunction barring defendant from any further use or reference to Plaintiff's Marks as well as disgorgement of all profits attributable to the wrongful use of the marks, reimbursement of plaintiff's lost profits and the costs of filing the instant action.

## NINTH CLAIM FOR RELIEF
### FLORIDA COMMON LAW TRADEMARK INFRINGEMENT

60. The allegations in paragraphs 1-24 above are realleged as if set forth in full herein.

61. The defendants' unauthorized use in commerce of Plaintiff's Marks is likely to result in confusion, deception or mistake to consumers and the general public and therefore constitutes an infringement of Plaintiff's Marks pursuant to Florida state common law.

62. Defendants have used and continue to use Plaintiff's Marks with full knowledge of plaintiff's exclusive rights in the marks, and such continuing use is therefore with an intent and purpose to trade upon the goodwill of the plaintiff and its marks. Defendants infringements are therefore willful, intentional and deliberate, and have resulted in significant damages to the plaintiff. Accordingly, plaintiff is seeking a preliminary and permanent injunction barring defendant from any further use or reference to Plaintiff's Marks as well as disgorgement of all profits attributable to the wrongful use of the marks, reimbursement of plaintiff's lost profits and the costs of filing the instant action.

## JURY DEMAND

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff requests a trial by jury of all issues that may be tried by a jury in this case.

## PRAYER FOR RELIEF

**WHEREFORE,** Fish Shack, LLC prays for an Order and Judgment as follows:

1. A judgment that defendants have unfairly competed with plaintiff and violated the trademark and unfair competition laws of the State of Florida and the United States and are jointly and severally liable for all damages proximately caused by defendants;

2. A finding that the defendants have violated *15 U.S.C. §1125 (a*) and grant plaintiff preliminary and permanent injunctive relief enjoining defendants' from any further use of Plaintiff's Marks together with damages pursuant to *15 U.S.C. §1117(a*),*(c)* consisting of defendants' profits, any damages sustained by plaintiff and the costs of the action; said amount to be trebled and that the Court award plaintiff its attorney's or in the alternative award damages in such amount as the Court in its discretion shall find to be just;

3. *A finding that defendants have violated Florida common law and statutory law and award damages and attorney's fees pursuant to the Florida Deceptive Trade Practices Act;*

4. Other economic and consequential damages in an amount to be determined at trial;

5. Such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this 12th day of October 2017:

/s/GREGG M. PALEY
Gregg M. Paley
FL Bar No.: 867004
Jennifer Colson
FL Bar No.: 047783
Colson & Paley, LLC
3170 N. Federal Hwy., #105
Lighthouse Pt, FL 33064
O:(954) 784-2290
Email: gpaley@colsonandpaley.com